CULPEPPER, Judge.
This case involves the written lease of a commercial building. The lessor, Gano D. *696 Lemoine, sued the lessee, Dewey Devillier, for (1) cancellation of the lease and (2) rent during the unexpired term. The defendant lessee answered, acquiescing in the cancellation of the lease, but urged as a special defense eviction from a portion of the property. Defendant also reconvened for damages for breach of the agreement. After a trial on the merits, the district court rendered judgment canceling the lease; awarded plaintiff $1,094.03 for rent; and denied defendant’s reconventional demand. Defendant appealed. Plaintiff did not answer the appeal.
The substantial issue is whether the leased premises included an area in rear of the building, used as part of a driveway. The defendant lessee was later denied the use of this driveway by the actual owner thereof, lessor’s brother, and this precipitated the instant litigation.
The general facts are that on August 6, 1960, plaintiff leased to defendant, for the purpose of operating a furniture store, certain property described as follows:
“A certain town lot situated in the town of Cottonport, Avoyelles Parish, Louisiana, containing one large building, and bounded North by Lance Ducote, East by Main Street, South by L. B. Gremil-lion and West by F. M. Rabalais; said lot being 33 feet by 129 feet * * * ”
The term of the lease was five years. The rent, payable at the end of each month, was 1% of all sales and charges with a minimum of $100 and a maximum of $175 per month.
The leased building is one of several which front on Main Street and run back to an open area in the rear, used as a driveway. On the other side of the driveway is a lumber yard. Access to this driveway is through a locked gate on each end. The driveway is owned by the lessor’s brother, Louis Lemoine, who also owns some of the store buildings as well as the lumber yard.
Defendant contends that when the lease was entered into he understood the building was 100 feet deep and the area in the rear 29 feet, making the total depth of 129 feet; and that the lessor owned this 29 foot area in rear of the store and intended to lease it. Defendant testified he asked that the lease expressly provide him the right to use the driveway leading to the rear of the leased premises; but that plaintiff said this could not be done because each property owner or tenant had to mutually agree to allow the others to cross his property, in consideration of the right to cross theirs, thereby affording all access to the driveway. The lease says nothing about the driveway.
The plaintiff, Gano Lemoine, testified that the use of the driveway was not mentioned during negotiations for the lease; that it was not until after the lease was signed that defendant asked about using it; that he then helped defendant arrange with his brother, Louis Lemoine, for permission to use the driveway; that Louis Lemoine agreed to let defendant use it provided he did not block it at any time; that Louis Lemoine then gave defendant a key to one of the gates.
Louis Lemoine testified essentially the same as his brother. He said he told defendant he could use the passage to the rear of the building, provided he did not block it for use by others.'
Defendant remained in the premises and used the passageway for over three years. Mr. Louis Lemoine testified that defendant, despite many warnings, continued to block the driveway by leaving his trucks parked there. Finally, on May 1, 1964, Mr. Louis Lemoine had his attorney write defendant a letter requesting that he cease using the driveway.
After being denied use of the driveway, defendant secured a new location for his business and moved out of the leased premises about September 1, 1964. The rent due on October 6, 1964, and for succeeding months, was not paid. These proceedings ensued.
*697 The first issue concerns an exception of no cause of action filed by defendant during the trial. The exception was referred to the merits and later overruled. In support of this exception, the defendant argues that plaintiff did not own the area in the rear of the store, which is part of the property leased; did not deliver possession thereof to the defendant; and hence the lease is ineffective and unenforceable as to any rents due thereunder.
The. essence of defendant’s argument in this regard is that the lease agreement described,' or was intended to include, the approximately 29 feet behind the building, on which the driveway is located.
As stated above, the lease agreement described a certain town lot, containing one large building, bound by certain named property owners and “being 33 feet by 129 feet.” During the trial it was shown that actually the building is 48 feet in width, by a depth of 108 feet. The depth of the property behind the building is not shown with exactitude, apparently because it developed that it is simply part of the lumber yard owned by Louis Lemoine and on which the driveway in question is located. In view of the vagueness of the description in the lease, parol evidence was considered to determine the intention of the parties. The trial judge, after hearing the conflicting testimony of defendant, on the one hand and of plaintiff and plaintiff’s brother, Louis Lemoine on the other (all briefly reviewed hereinabove) concluded that it was the intention of the parties to lease only the store building. The lower court found that defendant inspected the building before the lease was executed; was not led by plaintiff to believe that the lease included the driveway or the area in the rear of the building; and hence that defendant actually received possession of the property which the parties intended to lease, i.e., the building. There is clearly no manifest error in this factual finding by the trial judge. The exception of no cause of action was correctly overruled.
Defendant’s next argument concerns his special defense that he was justified in leaving the premises and stopping the payment of rent because he was “evicted from a portion of the leased premises”. The portion of the leased premises from which defendant contends he was evicted is, of course, the approximately 29 feet in the rear of the building. We have already found as a fact, in our above discussion of the exception of no cause, of action that the lease did not cover this 29 feet. It necessarily follows that defendant was not evicted from any portion of the leased premises. •
The facts . also show, as the trial judge found, that defendant was using the driveway solely by gratuitous sufferance of the owner thereof, Louis1 Lemoine, with the understanding that defendant would not block it. Despite repeated warnings, defendant continued to block the driveway and Louis Lemoine requested that he stop using it. There was no obligation expressed in the lease or intended by the parties whereby tne lessor warranted use of the driveway to the lessee. Hence, there was clearly no eviction of defendant from any right to use the driveway.
The final issue concerns plaintiff’s demand for rent. As stated above, the lease was for a term of five years, beginning August 6, 1960. The rent was 1% of all sales and charges, with a minimum of $100 and a maximum of $175 per month, payable at the end of each month. The trial judge correctly found that during the last few months defendant occupied the property he paid an average rental of $156.29. As stated above,, defendant moved from the premises on about September 1, 1964 and failed to pay the monthly rental due on October 6, 1964 or any thereafter.
Plaintiff filed this suit on February 15, 1965 praying both for cancellation of the lease and rentals of $175 per month for the remainder of the five-year term, totaling $1750. Defendant filed an answer on April *698 19, 1965, acquiescing in the cancellation of the lease but denying any liability for rent.
Defendant’s first argument regarding rent is that after he vacated the property, in about the first week of September, 1964, the plaintiff took possession; and hence that no rent is due. The facts show that in September of 1964 plaintiff boarded up the windows to protect against a predicted hurricane. Also, that in December of 1964 plaintiff stored a few Christmas trees in the empty building. But, on both of these occasions plaintiff obtained permission from defendant. The trial judge correctly found there was no actual or intended surrender of possession. They discussed how much rent was due, and defendant said he would try to help find another tenant. As the trial judge said: “There is not one bit of evidence that the parties ever, at any time, mutually agreed to terminate the contract * * * ”
Defendant’s next argument regarding rent is that the lease was cancelled on February 15, 1965 by plaintiff’s suit demanding both cancellation of the lease and rent during the unexpired term; hence that plaintiff is in no event entitled to rent beyond the date his suit was filed. Defendant calls attention to the well established jurisprudence that where the lessee fails to pay the rent the lessor may (1) sue to cancel the lease and evict the lessor, or (2) sue for rent for the unexpired term. But, he cannot demand both and, if he elects to seek rent for the unexpired term, the lease is continued in full force and effect. Bill Garrett Leasing, Inc. v. General Lumber & Supply Company, 164 So.2d 364 (1st Cir. 1964); Kinchen v. Arnold, 60 So.2d 114; Ranson v. Voiron, 176 La. 718, 146 So. 681; Henry Rose Mercantile & Manufacturing Co. v. Stearns, 154 La. 946, 98 So. 429.
Under this jurisprudence, defendant argues that when plaintiff sued for both reliefs he is presumed to have elected to cancel the lease and hence cannot seek rent due after suit was filed. In rejecting this argument, the district judge, in a well reasoned opinion, held that, under the circumstances, the lease cannot be considered cancelled until defendant filed his answer. Although plaintiff asked for cancellation, he could not treat the lease as terminated until the court so ordered. But, when defendant answered and also asked for cancellation, the lease must be considered at an end.
This result is in accord with our jurisprudence that the cancellation of leases is subject to judicial control according to-the circumstances. Edwards v. Standard Oil Company of Louisiana, 175 La. 720, 144 So. 430; Brewer v. Forest Gravel Company, 172 La. 828, 135 So. 372; Rudnick v. Union Producing Co., 209 La. 943, 25 So.2d 906; Touchet v. Humble Oil & Refining Co., D.C., 191 F.Supp. 291.
Thus, the trial judge awarded plaintiff rent through the month during which defendant’s answer was filed, April of 1965, i. e., rent through that due on May 6, 1965, a period of seven months, at $156.29 per month, or a total of $1,094.03.
The plaintiff, Gano D. Lemoine, died during this appeal and his widow and heirs have been substituted as parties plaintiff, namely: Therese De La Houssaye Lemoine, Marie Therese Lemoine Juneau, Gano D. Lemoine, Jr. and Ladell Lemoine Adams.
For the reasons assigned, the judgment appealed is affirmed. All costs of this appeal are assessed against the defendant appellant.
Affirmed.